**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**SHAMIA N.**

**Plaintiff,** **25-CV-00850-HKS**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

## DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #20.

## BACKGROUND[1]

On December 15, 2022, plaintiff, at the age of 49, protectively applied for supplemental security income and disability benefits with the Social Security Administration ("SSA"), alleging an onset date of November 20, 2020. Dkt. #5, pp. 338-345.

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

In a Disability Report filed on March 20, 2023, plaintiff alleged she was disabled due to a neck injury; a back injury, bilateral wrist injuries; high blood pressure; diabetes; high cholesterol; and dysthymia depression. Dkt. #5, p. 386.

Plaintiff's claim was denied initially and on reconsideration. Dkt. #5, pp. 237-246, 258-266. Plaintiff requested a hearing, and a telephonic hearing before Administrative Law Judge ("ALJ") Theodore Kim was held on September 12, 2024. Dkt. #5, pp. 182-. Plaintiff appeared with counsel.

Upon examination by the ALJ, plaintiff testified that she is 5'1" tall and weighs 215 pounds. Dkt. #5, p. 187. She lives with her 12-year-old son, and she completed two years of college, graduating with an associate's degree. Dkt. #5, p. 188.

Plaintiff testified that she last worked full-time on May 30, 2013. *Id.* The ALJ asked her what prevents her from working full-time, and plaintiff stated that she has chronic, intense, abrupt-onset, full-body pain, including spasms that require her to lie down, stretch out, and elevate her legs and feet at any given time. *Id.* She also needs to apply heat or massage her body parts, and she must be able to sit or stand at any time. *Id.*

The ALJ then asked plaintiff what she does during a normal day. *Id.* Plaintiff stated that she gets her son ready for school, and he has ADHD and PTSD, as well as health problems, including asthma and severe food allergies. Dkt. #5, pp. 188-189.

Plaintiff testified that taking care of her son is like a full-time job itself and is very challenging, and she has to take him to many appointments. Dkt. #5, p. 189.

Plaintiff further testified that every day is a struggle for her due to physical pain, and she tries to hide the pain from her son because it upsets him. *Id.* She has been unable to do the job of travel agent, which she started from home, due to the pain and caring for her son, and she has no energy to put into anything else. *Id.*

Upon examination by her attorney, plaintiff testified that she no longer lives close to family and thus has no one to help her get her son ready for school. Dkt. #5, p. 190. She used to live close to her mother and sister, but she moved away from them a year prior. *Id.* Her sister used to help her style her hair as she has problems with her hands. *Id.* However, she was diagnosed with alopecia, and she has lost a lot of her hair so she has to wear wigs. *Id.* She has been told that her hair loss may be due to an autoimmune disease. Dkt. #5, p. 191.

Next, plaintiff testified that she has difficulty sleeping due to back pain and asthma. *Id.* She falls asleep a lot during the day because she does not get rest at night. *Id.* Her back pain travels to her feet, and she thus only drives short distances. *Id.* She can only drive about thirty minutes because she gets back spasms. *Id.*

Next, plaintiff's counsel asked plaintiff about her hands, and plaintiff testified that she sometimes cannot open her pill bottles, and the evening before she was trying

to open a pepper grinder and it caused "waves of shock" through her body. Dkt. #5, p. 192. Plaintiff also testified that her pain is made worse by rain and cold weather. Dkt. #5, p. 193.

Plaintiff next testified that she was recently taken to the hospital because she was having chest pains and thought she might be having a heart attack. *Id.* She also described joint pain in her fingers, arms, elbows, knees, and neck, which feels like burning, and a doctor told her it could be due to an autoimmune disease. Dkt. #5, p. 194. She was thus referred to a rheumatologist and a cardiologist. *Id.*

Plaintiff next testified that she has a lot of swelling in her legs, ankles, and feet that prevent her from walking sometimes, and she uses a cane and a back brace. Dkt. #5, pp. 194-195.

Upon re-examination by the ALJ, plaintiff testified that the cane was prescribed by her previous pain management doctor, and she has been using it since 2013 or 2014. Dkt. #5, p. 195.

The ALJ next heard from Zachary Fosberg, a vocational expert ("VE"). The VE testified that he was familiar with the SSA's definitions of various types of work by exertion and skill levels, and he was familiar with the Dictionary of Occupational Titles ("DOT" and its companion publication, the Selected Characteristics of Occupations ("SOC"). Dkt. #5, p. 196. The VE also confirmed that he had reviewed plaintiff's vocational

history and that he heard her testimony during the hearing. Dkt. #5, p. 197. Plaintiff's counsel stated that she had no objection to the VE testifying. *Id.*

The ALJ asked the VE to assume a hypothetical individual with plaintiff's age, education, and work experience who can perform work at the light exertional level; frequently operate hand controls, reach, push, pull, handle, finger, and feel with both upper extremities; occasionally push or pull, or operate foot controls with both lower extremities; occasionally kneel, crouch, stoop, balance, and crawl as defined in the SOC; occasionally climb stairs and ramps; never climb ladders, ropes, and scaffolds; never be exposed to unprotected heights and moving, mechanical parts; tolerate occasional exposure to vibration; understand, carry out, and remember simple instructions, and use judgment to make simple, work-related decisions; and occasionally interact with supervisors and co-workers and never interact with the public. Dkt. #5, pp. 197-198.

Given this hypothetical, the ALJ asked the VE if there are jobs in the national economy that the person could perform. Dkt. #5, p. 198. The VE testified that the person could perform the jobs of Routing Clerk, unskilled, with approximately 122,000 jobs nationally; Assembler, unskilled, with approximately 20,000 jobs nationally; and Inspector, unskilled, with approximately 7,000 jobs nationally. *Id.*

The ALJ asked the VE if his testimony was consistent with the DOT and SOC, and the VE said it was, except the DOT does not specifically address interactions with co-workers, supervisors, and the public, or the differences in types of climbing or the

use of foot controls. Dkt. #5, pp. 198-199. His testimony on those issues was based on his experience. Dkt. #5, p. 199.

Next, the ALJ asked the VE to assume the first hypothetical with the additional requirement that the person requires a cane to ambulate. *Id.* The ALJ asked if there are still jobs in the national economy that the person can perform. The VE said the person could still perform the Assembler and Inspector jobs with the job numbers reduced by half. *Id.* The VE further testified that a cane limitation would preclude the Routing Clerk position, but the person could perform the job of Price Marker, with job numbers reduced by half to 83,500. In that job, the person would not be exposed to the general public and would primarily be working in the back of a retail establishment or warehouse sitting at a bench or tabletop sorting and marking items. Dkt. #5, pp. 199-200.

The VE also noted that the DOT and SCO do not address the use of a cane for ambulation in the workplace, and that would be based on his professional and vocational knowledge and experience. Dkt. #5, p. 200. The ALJ asked the VE if the Price Marker job could also be performed under the first hypothetical, and the VE said it could with the reduced numbers, as there would be times when the person would be exposed to the general public. *Id.*

Finally, the ALJ asked the VE to assume a person under the first hypothetical, but the person can stand and/or walk for less than two hours and sit less than two hours; must lie down 15 minutes every hour and elevate her legs; and would be

off task for 15% of the workday and absent three days per week. *Id.* The VE stated that there would be no jobs in the national economy that such a person could perform. Dkt. #5, p. 201.

The VE also stated that the DOT and SOC do not specifically address lying down in the workplace, elevation of lower extremities, absenteeism, time off-task, or sitting or standing for less than two hours, and that his opinion as to those limitations was based on his professional and vocational knowledge and experience. *Id.*

Plaintiff's counsel did not have any questions for the VE. *Id.*

On October 18, 2024, the ALJ issued an unfavorable decision finding that plaintiff was not disabled. Dkt. #5, pp. 161-181.

Plaintiff's counsel requested time to submit additional evidence to the Appeals Council, which was granted by letter dated December 18, 2024. Dkt. #5, p. 43-49. That letter stated, in part: "We will consider additional evidence that is new, material, and relates to the period on or before the date of the hearing decision. For the Appeals Council to grant review based on new evidence, there must be a reasonable probability that the evidence would change the outcome of the decision." Dkt. #5, p. 43.

As relevant here, plaintiff subsequently submitted to the Appeals Council records from Windsong Radiology of an MRI taken of plaintiff's brain on December 10,

2024, as well as records from Buffalo Rheumatology and Medicine PLLC of an x-ray taken of plaintiff's hands and feet on January 2, 2025. Dkt. #5, pp. 37, 50-53.

On July 7, 2025, the Appeals Council denied plaintiff's request for review, noting that the additional records post-dated the ALJ's October 18, 2024 decision, and stating: "This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before October 18, 2024." Dkt. #5, p. 7. This action followed.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff has not engaged in substantial gainful activity since

November 20, 2020, the alleged onset date; (2) plaintiff has the severe impairments of degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine with neuritis; obesity; depressive disorder; and anxiety disorder; (3) plaintiff's impairments do not meet or medically equal any listed impairment; (4) plaintiff has the RFC to perform light work[2] except she can frequently operate hand controls, reach, push, pull, handle, finger, and feel with both upper extremities; occasionally kneel, crouch, stoop, balance, and crawl, and climb stairs and ramps; never climb ladders, ropes, and scaffolds, and never be exposed to unprotected heights and moving mechanical parts; she requires a cane to ambulate; she can tolerate occasional exposure to vibration; she can understand, carry out, and remember simple instructions and use judgment to make simple work-related decisions; and she can occasionally interact with supervisors and co-workers, and never interact with the public; (5) plaintiff has no past relevant work; (6) plaintiff was a younger individual on the alleged onset date and subsequently changed age category to closely approaching advanced age; (7) plaintiff has at least a high school education; (8) transferability of job skills is not an issue because plaintiff does not have past relevant work; (9) considering plaintiff's age, education, work experience, and RFC, she can perform jobs in the national economy of assembler (10,000 jobs), inspector (3,500 jobs), and price marker (83,500 jobs); and (7) plaintiff was not, therefore, disabled

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

within the meaning of the SSA from November 20, 2020, to the date of the ALJ's decision. Dkt. #5, pp. 166-176.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)).

Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

**<u>Challenges to the ALJ's Decision</u>**

Plaintiff makes six challenges to the ALJ's decision. She argues that the RFC was not supported by substantial evidence because: (1) new imaging evidence which was submitted to, but rejected by, the Appeals Council warrants remand; (2) the ALJ improperly evaluated the opinion of plaintiff's primary treatment provider, Dr. Frederick Elliott; (3) the ALJ failed to include the need for alternating sitting and standing options; (4) the ALJ incorporated a cane limitation but failed to explain whether any related limitations were warranted; (5) the ALJ failed to incorporate limitations regarding off-task time; attention and concentration; and attendance and punctuality; and (6) the ALJ failed to incorporate more restrictive limitations in supervisor and co-worker interactions.

***New Evidence Submitted to the Appeals Council***

"Under 20 C.F.R. § 404.970(a)(5), the Appeals Council will review a case on the basis of new evidence if such evidence is 'new, material, and relates to the period

on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.'" *Carrie F. v. Comm'r of Soc. Sec.*, 3:25-CV-00487 (VDO), 2026 WL 851229, at *6 (D. Conn. Mar. 27, 2026) (quoting 20 C.F.R. § 404.970(a)(5)).

"New evidence is any evidence that has not been considered previously during the administrative process and is not cumulative to that already contained in the record prior to the ALJ decision." *Id.* (citation and internal quotation marks omitted). Further, evidence is material if "it is (i) relevant to the time period for which benefits have been denied and (ii) probative, meaning it provides a reasonable probability that the new evidence would have influenced the Commissioner to decide the claimant's application differently." *Id.*

"Where, as here, a claimant argues that the Appeals Council erred by failing to grant review based on additional evidence, the question for the Court is whether substantial evidence supports the ALJ's decision, even considering the new evidence." *Albino v. Comm'r of Soc. Sec.*, 1:21-cv-01223-GRJ, 2026 WL 1132831, at *9 (S.D.N.Y. April 27, 2026) (citing *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). *See also Scott C. v. Comm'r of Soc. Sec.*, 23-CV-243 (JLS), 2025 WL 1713260, at *4 (W.D.N.Y. June 18, 2025) ("In other words, the relevant inquiry is not whether the Appeals Court properly determined whether the evidence was new and material, but whether the ALJ's decision is supported by substantial evidence in light of the additional information submitted to the Appeals Council.") (citation and internal quotation marks omitted) (cleaned up).

As noted above, the Appeals Council stated that the new radiology and rheumatology records from December 10, 2024 and early 2025 did not relate to plaintiff's alleged period of disability because they post-dated the ALJ's October 18, 2024 decision. Dkt. #5, p. 7. This is erroneous. *See Scott C.*, 2025 WL 1713269, at *4 (Appeals Council's reasoning that new evidence did not relate to period in question because it post-dated ALJ's decision "is not sufficient in determining whether evidence relates back to the period at issue").

Instead, the relevant inquiry is whether the records "pertain to the same conditions that Plaintiff previously complained of." *Id.* (citations omitted).

Here, plaintiff argues that the new records pertain to her impairments of depression and hand and feet pain. Dkt. #12-1, pp. 18-26. The Court agrees, as the record is clear that plaintiff cited these conditions in connection with her disability claims.

Specifically, plaintiff listed dysthymia depression and bilateral wrist injuries in her disability report; she cited pain in her feet, hands, fingers, and wrists in her function report; she testified to these problems during the administrative hearing; and her treatment records reflect complaints of hand, wrist, and foot pain. Dkt. #5, pp. 191-195, 286, 388, 658.

However, "even when the Appeals Council errs in failing to consider newly submitted evidence, remand is not required where the new evidence would not have resulted in a different outcome, such as where the evidence is merely duplicative of evidence that the ALJ already considered." *Heather V. v. Comm'r of Soc. Sec.*, Case # 20-CV-01870-FPG, 2023 WL 2607301, at *4 (W.D.N.Y. Mar. 23, 2023) (citing *Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 40 (2d Cir. 2020)).

Having reviewed the record, the Court concludes that the ALJ's decision is supported by substantial evidence, even considering this additional evidence, and plaintiff has not shown a reasonable probability that the ALJ would have rendered a favorable decision with the benefit of these records.

First, plaintiff relies on the December 2024 MRI of her brain—which showed a reduction in the volume of her hippocampi—to argue that such results are indicative of chronic depression and learning and memory issues. Dkt. #12-1, pp. 18-21.

However, in rendering his decision, the ALJ reviewed the extensive medical evidence regarding plaintiff's depression diagnosis and symptoms, including her treatment records and various medical opinions, and he found her depression to be a severe impairment at step two of the sequential analysis. Dkt. #5, p. 167. He further found her to be "mildly" limited in two of the four "paragraph B" criteria for mental impairments and "moderately" limited in the other two. *Id.* In doing so, he specifically considered evidence that she had a poor short-term memory, but he weighed that against evidence

of consistently normal mental status exams, including ones from her regular therapy appointments. Dkt. #5, p. 168.

Similarly, the ALJ factored plaintiff's depression into his RFC determination, noting that she "was assessed with a persistent depressive disorder" and "was "diagnosed with depression and anxiety." Dkt. #5, pp. 171, 173. The ALJ also weighed the medical opinions, finding "generally persuasive" the opinion of state agency consultant Dr. M. Juriga that plaintiff was "moderately limited" in eight of twenty areas of mental functioning. Dkt. #5, pp. 173, 232-233.

Notably, the ALJ found "not persuasive" the opinion of state agency doctor L. M. Blackwell that plaintiff's depression was non-severe. Dkt. #5, p. 173. The ALJ found that Dr. Blackwell's opinion was not consistent with the objective medical evidence; that plaintiff attended mental health therapy regularly; and that plaintiff's diagnosis of depression and anxiety was "indicative of vocational limitations." *Id.*

Also relevant to the ALJ's consideration of plaintiff's depression was the opinion of consultative examiner Dr. Gregory Fabiano, who examined plaintiff on June 20, 2023. Dr. Fabiano noted that plaintiff at times displayed a depressed and tearful affect; she reported her mood was "okay"; her attention and concentration were impaired due to distraction; she displayed difficulty in certain memory tests; and her cognitive functioning was within the broad average range. Dkt. #5, pp. 171, 755. Dr. Fabiano opined that the results of the exam were "inconsistent with the claimant's vocational and educational

history" in that she had a "history of gainful employment and has an associate's degree." Dkt. #5, p. 755. He also opined that she had mild and moderate limitations in the four areas of mental functioning, but that she was not limited in the ability to "sustain an ordinary routine and regular attendance at work." Dkt. #5, p. 756. The ALJ found this opinion to be somewhat persuasive. Dkt. #5, pp. 173-174.

Considering this background, plaintiff has not shown that the records of the MRI of her brain would have added to, or altered, the ALJ's analysis because the record already contained multiple diagnoses of depression which the ALJ factored into the RFC. *See Albino*, 2026 WL 1132831, at *9 (rejecting argument for remand based on Appeal Council's failure to consider new evidence which was merely duplicative of other record evidence); *Elaine C. v. Comm'r of Soc. Sec.*, 1:23-CV-02120-GRJ, 2023 WL 7280720, at *10 (finding ALJ's decision supported by substantial evidence even considering new evidence submitted to Appeals Council; new medical opinion was not "materially different" from other evidence).

Plaintiff's assertion that the MRI of her brain might change the ALJ's assessment of her depression because his determination was, in part, based "on the absence of objective evidence" is factually incorrect. Dkt. #12-1, p. 21. The ALJ did not state that there was no objective evidence of plaintiff's depression; to the contrary, as noted above, he repeatedly acknowledged her diagnoses of both depression and anxiety. The only medical opinion the ALJ faulted as being inconsistent with the objective medical

evidence was that of Dr. Blackwell—who opined that plaintiff's depression was non-severe—which was a determination in plaintiff's favor. Dkt. #5, p. 173.

Plaintiff's assertion appears to be an effort to fit this matter within the line of cases in which courts find that new evidence warrants remand where it contains information that remedies evidentiary deficiencies identified by the ALJ in reaching his or her decision. *See, e.g., Scott C.*, 2025 WL 1713260, at *6 (finding that new medical source statement may influence the ALJ's decision on remand where it provided additional context to source's prior statement, including vocational information that the ALJ previously found lacking); *Heather V.*, 2023 WL 2607301, at *4 (remanding based on plaintiff's submission of new opinions from her treating physician; ALJ found prior opinion of treating physician unpersuasive due to lack of "specific functional parameters," which new opinions addressed). This is not such a case.

Similarly, as to plaintiff's hands and feet, the RFC is supported by substantial evidence, even considering the x-rays taken in January 2025. The ALJ considered plaintiff's function report, completed on May 21, 2023, in which she alleged pain in her feet, hands, fingers, and wrist. Dkt. #5, pp. 170, 399. He also noted that plaintiff reported that she gets her son ready for school every day; and she can prepare simple meals and perform household chores such as sweeping, mopping, ironing, doing laundry, and vacuuming, although the latter is painful. Dkt. #5, p. 170.

The ALJ also reviewed medical evidence that related to plaintiff's upper and lower extremities. The ALJ acknowledged records from her primary care doctor, Dr. Frederick Elliott, reflecting her complaints of feet and hand pain in May 2023, but he also noted that Dr. Elliott examined plaintiff the previous month and reported that the results of upper and lower extremity exams were normal. Dkt. #5, pp. 172, 658, 662.

The ALJ next reviewed a consultative examination conducted on June 23, 2023, by Dr. Hongbiao Liu. Dkt. #5, p. 171. Dr. Liu noted that plaintiff stated that she was in pain, but she could lift twenty pounds and walk two blocks. Dkt. #5, p. 759. Upon examination, plaintiff appeared to be in no acute distress; had a normal gait; used no assistive device; could walk on her heels and toes with moderate difficulty; could squat 40% due to pain; needed no help getting on or off the exam table; and was able to rise from a chair without difficulty. Dkt. #5, p. 760.

Under "musculoskeletal," Dr. Liu reported that plaintiff had full range of motion in her elbows, forearms, wrists, and fingers bilaterally; full range of motion in her hips, knees, and ankles bilaterally; and her strength was 5/5 in both upper and lower extremities. Dkt. #5, p. 761. Dr. Liu also noted that plaintiff's hand and finger dexterity were intact, and that her grip strength was 5/5 bilaterally. Dkt. #5, p. 762. Dr. Liu opined that plaintiff had mild to moderate limitations for prolonged walking, bending, kneeling, squatting, lifting, carrying, overhead reaching, prolonged sitting, standing, and stair climbing. Dkt. #5, p. 762.

Next, the ALJ noted that plaintiff had been in physical therapy for her back pain and related symptoms, but she was discharged in August 2023 because she had made “marked improvements in functional strength,” reaching goals which included being able to lift a 25-pound item from the floor to a table and going up and down stairs with a reciprocal pattern while using upper extremity support. Dkt. #5, pp. 171, 807-808.

The ALJ also noted that, in a neurological exam on June 24, 2024, plaintiff had full strength in her upper and lower extremities, including hand grip; intact sensation in her upper and lower extremities; but diminished reflexes in her feet. Dkt. #5, pp. 172, 979-980. Similar results were reported in a subsequent exam on August 12, 2024. Dkt. #5, p. 1170.

Given this evidence, the Court concludes that the report of the January 2025 x-rays of plaintiff’s hands and feet—which states that they reflect “mild” and “slight” osteoarthritic changes—does not “undercut” the reasoning of the ALJ so as to require remand. *Scott C.*, 2025 WL 1713260, at *5.

Indeed, the RFC limits plaintiff to light work—which, by definition, restricts her to lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds—and it limits her to only occasionally pushing or pulling or operating foot controls with her lower extremities. Further, the provision for frequent operation of hand controls and other upper extremity manipulations is supported, as noted above, by Dr Liu’s determination that plaintiff’s hand and finger dexterity were intact, and

that her grip strength was 5/5 bilaterally. Dkt. #5, p. 762. *See Robert G. v. Comm'r of Soc. Sec.*, Case # 20-cv-06698-FPG, 2022 WL 3030152, at *3 (W.D.N.Y. Aug. 1, 2022) ("It is well-settled that a consulting examiner's opinion may be given great weight and may constitute substantial evidence to support a decision.") (citation and internal quotations omitted) (cleaned up).

Plaintiff thus has not shown a reasonable probability that the January 2025 x-rays would cause the ALJ to reach a different decision.

Plaintiff's reliance on *Blash v. Comm'r of Soc. Sec.*, 813 F. App'x 642 (2d Cir. 2020) (summary order) is misplaced. There, the Court of Appeals held that the case should be remanded to the Commissioner because: (1) certain evidence in question was in the record prior to the ALJ's decision, but the ALJ failed to consider it even though it indicated that older evidence of record was stale; (2) there was an obvious gap in the record which the ALJ failed to address by obtaining additional medical records; and (3) additional evidence pre-dating the ALJ's decision submitted by plaintiff to the Appeals Council demonstrated that her condition had "significantly worsened" such that the older reports of her functioning were stale. *Id.* at 644-645. This case presents none of those issues.

The Court thus finds plaintiff's first argument to be without merit.

***The ALJ's Evaluation of Dr. Elliott's Opinion***

Plaintiff next argues that, in formulating the RFC, the ALJ did not properly explain why he found the opinion of Dr. Elliott—plaintiff's primary care provider—not persuasive. The Court disagrees.

On October 10, 2023, Dr. Elliott completed a one-page "Medical Opinion Re: Ability to Do Work-Related Activities." Dkt. #5, p. 872. Dr. Elliott stated that he had been treating plaintiff for approximately eight months, and he opined that plaintiff was not "capable of performing a full-time job that is 8 hours per day, five days per week, on a regular and continuing basis." *Id.*

Dr. Elliott further opined that, in an 8-hour workday, plaintiff could walk, stand, and sit for less than 2 hours; she could occasionally and frequently lift less than 10 pounds; she would need the freedom to shift at will between sitting and standing/walking; and she would need to lie down at unpredictable times during an 8-hour workday. *Id.*

Finally, in the check-box portion of this form, Dr. Elliott opined that plaintiff would be absent from work more than three times a month and off-task more than 15% of the time. *Id.*

The ALJ found these opinions not persuasive, concluding that the limitations to which Dr. Elliott opined were "not consistent with the objective medical evidence." Dkt.

#5, p. 174. He also found that the consultative exam by Dr. Liu indicated fewer restrictions than those to which Dr. Elliott opined.

It is important to note that Dr. Elliott's opinion was the last piece of evidence reviewed by the ALJ before he concluded his analysis, and his assessment was preceded by over eight pages containing a detailed discussion of plaintiff's treatment records, medical tests, and the opinions of other doctors and consultative examiners.

In addition to evidence discussed above in relation to plaintiff's first argument, the ALJ's assessment of Dr. Elliott's opinion was preceded by his review of the opinions of state agency doctors H. Miller and C. Krist who opined that plaintiff was limited to light work and could stand and/or walk and sit for about 6 hours in an 8-hour workday; frequently climb ramps/stairs, balance, kneel, crouch; occasionally climb ladders/ropes/scaffolds, stoop, crawl; was limited in reaching overhead but unlimited in reaching in other directions; and was not limited in handling, fingering, and feeling. Dkt. #5, pp. 173, 230-232, 252-254. The ALJ found these opinions somewhat persuasive as they were supported by their review of the evidence and consistent with the objective medical evidence. Dkt. #5, p. 173.

Thus, "[w]hile the ALJ could have provided a more robust discussion of [Dr. Elliott's] opinion, the Court concludes that it was not improper when reviewed in context of the ALJ's decision in its entirety." *Ernest S. v. Comm'r of Soc. Sec.*, 1:22-CV-00509-EAW, 2023 WL 5738449, at *6 (W.D.N.Y. Sept. 6, 2023) (citing *Loucks v. Kijakazi*, No. 21-

1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (holding that if an ALJ commits procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record[,] the court could affirm if a searching review of the record assures [the Court] that the substance of the [regulation] was not traversed") (internal quotation marks omitted)).

It is clear from a complete reading of the ALJ's decision that he found Dr. Elliott's opinions of such extreme limitations unpersuasive, in part, because they lacked objective support in the treatment records, including his own, which is an appropriate consideration. *Id.* (citation omitted).

Also, Dr. Elliott's opinions regarding absenteeism and off-task time appear in a fill-in-the-box portion of the form. "Such a form response that lacks any explanation as to how [the doctor] reached this conclusion is not particularly persuasive and of little value to the ALJ." *Moss v. Comm'r of Soc. Sec.*, 21 Civ. 01352 (JCM), 2022 WL 4365349, at *16 (SD.N.Y. Sept. 20, 2022) (citations and internal quotation marks omitted). *See also Koerber v. Comm'r of Soc. Sec.*, Case # 6:19-cv-1070-DB, 2020 WL 1915294, at *5 (W.D.N.Y. April 20, 2020) (noting that fill-in-the-box forms are of "limited evidentiary value.") (citations omitted).

Further, the ALJ was entitled to rely on the opinions of both examining and non-examining state agency doctors in formulating the RFC, which he did. *Id.* at *6. *See also Joseph M. v. Comm'r of Soc. Sec.*, 23-CV-0369-LJV, 2024 WL 5247704, at *6

(W.D.N.Y. Dec. 30, 2024) ("The opinion of a non-examining source may override that of an examining source, even a treating source, provided the opinion is supported by evidence in the record.") (citation and internal quotation marks omitted).

It is also well-established that an ALJ may properly reject a treating physician's opinion that a claimant is unable to work because that "is an ultimate legal issue reserved to the Commissioner." *Banks v. Comm'r of Soc. Sec.*, 20-CV-3867(EK), 2023 WL 5718757, at *5 (E.D.N.Y. Sept. 5, 2023) (citations and internal quotation marks omitted).

In sum, "[w]hen the record contains competing medical opinions, it is the role of the Commissioner, and not this Court, to resolve such conflicts." *Emmanuel G. v. Comm'r of Soc. Sec.*, 1:22-cv-06497-GRJ, 2024 WL 303849, at *4 (S.D.N.Y. Jan. 26, 2024) (citation omitted).[3]

***Need for Alternating Sitting and Standing Options***

Plaintiff next argues that the RFC is not supported by substantial evidence because the ALJ failed to include a sit-stand option. Dkt. #12-1, pp. 30-33.

---

[3] Plaintiff's reliance on *Kasey G. v. Comm'r of Soc. Sec.*, 542 F. Supp.3d 190 (W.D.N.Y. 2021), to support her argument about the ALJ's treatment of Dr. Elliott's opinion is misplaced. There, the Court found remand was required because the ALJ had completely failed to consider an opinion from plaintiff's school psychologist, which the Commissioner conceded *Id.* at 195-196. The ALJ here did not ignore Dr. Elliott's opinion, he simply found it unpersuasive. That plaintiff disagrees with his determination is not a basis for remand. *Laura K. v. Comm'r of Soc. Sec.*, 23-CV-641 (JLS), 2025 WL 339006, at *6 (W.D.N.Y. Jan. 30, 2025).

Plaintiff bases this argument primarily on the opinions of Dr. Liu and Dr. Elliott.

First, Dr. Liu did not opine that plaintiff needed to sit or stand at will. Instead, in his report, Dr. Liu merely noted that plaintiff self-reported that she changes position after ten minutes while sitting or standing. Dkt. #5, p. 759. However, as noted above, Dr. Liu's examination of plaintiff noted largely unremarkable findings in her general appearance, gait, station; musculoskeletal system; and extremity strength. Dkt. #5, pp. 759-762.

In his medical source statement, Dr. Liu opined, *inter alia*, that plaintiff had "mild to moderate" limitations for prolonged walking, sitting, and standing. Dkt. #5, p. 762.

The ALJ also found that plaintiff's statements about the limiting effects of her symptoms were not supported by the medical records, including diagnostic imaging and physical exams. Dkt. #5, pp. 170, 172. Further, the ALJ found somewhat persuasive the opinions of state agency consultants Drs. Miller and Krist, who opined that plaintiff was capable of performing light work, including the ability to stand and/or walk and sit for about 6 hours in an 8-hour workday. Dkt. #5, pp. 173, 230, 252.

While Dr. Elliott opined that plaintiff needed to be able to shift at will between sitting and standing, as explained above, the ALJ reasonably found Dr. Elliott's opinion unpersuasive because it was inconsistent with the objective medical evidence. Dkt. #5,

p. 174. It is well established that it is "the ALJ's responsibility to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Terrence S. B. v. Comm'r of Soc. Sec.*, 1:22-cv0380, 2024 WL 4131237, at *3 (W.D.N.Y. Sept. 10, 2024) (citation and internal quotation marks omitted).

Furthermore, courts within the Second Circuit routinely conclude that even moderate, as well as mild to moderate, limitations in walking, sitting, or standing are consistent with light work. *See Aida M. v. Comm'r of Soc. Sec.*, Case No. 1:22-cv-00869-TPK, 2025 WL 854334, at *5 (W.D.N.Y. Mar. 19, 2025) (concluding that RFC was based on substantial evidence where ALJ found persuasive Dr. Liu's opinion that plaintiff was "moderately" limited in, *inter alia*, sitting and standing but still concluded plaintiff was capable of light work); *Daniel James V. v. Comm'r of Soc. Sec.*, 1:20-CV-01826-MJR, 2023 WL 128521, at *4 (W.D.N.Y. Jan. 9, 2023) (finding that Dr. Liu's opinion that plaintiff had a mild to moderate limitation in prolonged walking was not inconsistent with RFC for light work).

Another judge in this Court recently considered a similar argument regarding an ALJ's failure to include a sit-stand option in the RFC. *See Patricia D. v. Bisignano*, 24-CV-LGF, 2026 WL 2665441 (W.D.N.Y. Sept. 10, 2026). There, the plaintiff alleged disability based on numerous physical impairments, and she underwent a consultative exam by Dr. Liu. *Id.* at *3. Dr. Liu concluded that plaintiff had mild-to-moderate limitations in, *inter alia*, prolonged standing and walking. *Id.*

On appeal from the ALJ's unfavorable decision, plaintiff argued that the ALJ erred in not including a sit-stand option in her RFC. *Id.* at *8. The Court rejected this argument, reasoning, in part:

> In particular, Dr. Liu reported that Plaintiff claimed she needed to "change position 10 minutes while sitting or standing.". . . Dr. Liu's medical source statement, however, is that Plaintiff "has mild-to-moderate limitations" for prolonged walking and standing, and is silent as to any need for Plaintiff to change position at will. . . *It is significant that self-reported symptoms are not objective medical findings and thus are not substantial evidence. . . . Because Plaintiff's self-reported need for a sit/stand option is not supported by any objective medical findings in the record, the ALJ did not err by failing to include such limitation in the RFC formulation. There is thus no merit to this argument.*

*Id.* (citations and internal quotation marks omitted) (emphasis added).

The Court reaches the same conclusion regarding plaintiff's argument here.

***Use of a Cane***

Plaintiff also argues that the RFC is not supported by substantial evidence because the ALJ incorporated a cane limitation that failed to discuss whether related limitations were warranted. Dkt. #12-1, pp. 34-38. This argument is not well taken.

First, the ALJ took plaintiff at her word when she testified at the hearing that she needed to use a cane to walk, and that it had been prescribed to her by a pain management doctor in 2013 or 2014. Dkt. #5, p. 195. The ALJ thus included a limitation in the RFC that plaintiff "requires a cane to ambulate." Dkt. #5, p. 174.

Plaintiff recites general authorities regarding how use of an assistive device is addressed in the disability benefits context, but the cases she cites generally involve challenges to an ALJ's *failure* to include a cane limitation in an RFC. Dkt. #12-1, pp. 34-36.

Plaintiff also asserts that the ALJ "failed to specify whether there were any other limitations in the RFC as the result of [plaintiff] needing to use the cane." Dkt. #12-1, p. 36. But this argument improperly shifts the burden on this question because it is well-established that "it is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ." *Beaman v. Comm'r of Soc. Sec.*, 1:18-CV-01344 EAW, 2020 WL 473618, at *6 (W.D.N.Y. Jan. 28, 2020) (citation omitted).

Moreover, when the ALJ questioned the VE at the hearing, he specifically included a hypothetical where the individual required a cane to ambulate. Dkt. #5, p. 199. The VE testified that the jobs of assembler and inspector would still be available, but at reduced numbers, and that while the use of a cane would preclude the routing clerk job, the person could also perform the job of price marker. Dkt. #5, pp. 199-200. The VE testified that although the DOT and SCO do not address the use of a cane for ambulation in the workplace, his testimony on this issue was based on his professional and vocational knowledge and experience. Dkt. #5, p. 200. Plaintiff's attorney did not ask the VE any questions.

It is well established that an ALJ may reasonably rely on the testimony of a VE regarding the availability of jobs in the national economy where the claimant has limitations in addition to those contained in the general exertional categories. *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) ("[W]e conclude that the vocational expert was not required to articulate a more specific basis for his opinion, and the ALJ reasonably credited this testimony, which was given on the basis of the expert's professional experience and clinical judgment, and which was not undermined by any evidence in the record.").

For these reasons, the Court finds no basis for remand on this issue.

***Off-Task Behavior and Attendance***

Plaintiff next argues that the RFC is not based on substantial evidence because the ALJ failed to include limitations to address the opinion of state agency psychological examiner Dr. M. Juriga that plaintiff was "moderately limited" in three areas encompassed under the category of "Sustained Concentration and Persistence Limitation:" (1) the ability to maintain attention and concentration for extended periods; (2) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (3) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Dkt. #12-1, p. 40; Dkt. #5, p. 233.

Plaintiff relies heavily on *Nunez v. Comm'r of Soc. Sec.*, 164 F.4th 60 (2d Cir. 2025), in which the Court of Appeals remanded on the basis that the ALJ had failed to account for the plaintiff's moderate limitations in "concentrating, persisting, or maintaining pace." *Id.* at 71-73. However, the Court's remand decision was based on its conclusion that it had reviewed the entire administrative record and could not find "*any justification* for the ALJ's RFC, including off-task time and absenteeism." *Id.* at 71 (emphasis added).

This case is readily distinguishable. Notwithstanding his opined moderate limitations, Dr. Juriga also concluded that plaintiff "retains the ability to perform the basic mental demands of unskilled work on a regular basis." Dkt. #5, p. 229. Similarly, Dr. Blackwell and Dr. Fabiano both opined that plaintiff had no limitation in the ability to sustain an ordinary routine and regular attendance at work. Dkt. #5, p. 252, 756. *See Benjamin v. Comm'r of Soc. Sec.*, 25-2343, 2026 WL 697004, at *2, n.2 (2d Cir. Mar. 12, 2026) (summary order) ("The record here is unlike that in *Nunez* because the state agency consultants concluded that Benjamin could sustain a normal workday and work week." . . . That is substantial evidence supporting the ALJ's RFC determination.") (citations and internal quotation marks omitted).

Furthermore, courts within the Second Circuit have long held that moderate "limitations in mental function capacities such as pace, concentration, sustaining an ordinary routine, regular attendance at work, staying on schedule, and related capacities do not prevent individuals from performing unskilled work." *Sivillo v. Comm'r of Soc. Sec.*,

25-CV-6112 (OEM), 2026 WL 2676613, at *4 (E.D.N.Y. Sept. 11, 2026) (citations and internal quotation marks omitted). *See also Orlando O. v. Comm'r of Soc. Sec.*, 25-cv-04159-VR, 2026 WL 2859813, at *7 (S.D.N.Y. Sept. 23, 2026) ("The Second Circuit has found that moderate limitations in mental functioning are not inconsistent with an RFC for unskilled work.") (citations and internal quotation marks omitted); *Leyla S-H v. Comm'r of Soc. Sec.*, 1:25-CV-03735-GRJ, 2026 WL 1493379, at * (S.D.N.Y. May 28, 2026) ("Moreover, courts considering *Nunez*, including the Second Circuit, have declined to read it as overruling the significant body of case law finding that moderate impairment in mental functioning can be adequately addressed by restrictions such as those incorporated by the ALJ here.") (citations omitted); *Albino v. Comm's of Soc. Sec.*, 1:21-cv-01223-GRJ, 2026 WL 1132831, at *6-7 (S.D.N.Y. April 27, 2026) (restriction to unskilled work adequately accounts for moderate impairments in mental functioning); *Marie F. G. v. Comm'r of Soc. Sec.*, 25 Civ. 416 (NSR)(JCM), 2026 WL 540604, at *14-16 (S.D.N.Y. Feb. 12, 2026) (distinguishing *Nunez* and noting that "courts in this Circuit have found that moderate limitations in mental functioning are not inconsistent with an RFC for unskilled work) (citation and internal quotation marks omitted), *report and recommendation adopted*, 2026 WL 1078558 (April 21, 2026); *Elaine C. v. Comm'r of Soc. Sec.*, 1:23-CV-02120-GRJ, 2023 WL 7280720, at *5 (S.D.N.Y. Nov. 3, 2023) (ALJ properly accommodated plaintiff's moderate mental limitations by limiting her to simple, routine, and repetitive tasks).

The ALJ thus adhered to these authorities by limiting plaintiff to simple, unskilled work.

The same result obtains regarding plaintiff's argument that Dr. Juriga's opinions require limitations regarding absenteeism and off-task time. *See Sivillo*, 2026 WL 2676613, at *4 ("The Second Circuit has rejected arguments by claimants that a medical opinion finding moderate limitations in following instructions, maintaining attention and concentration, maintaining regular attendance, performing activities within a schedule, and being punctual requires an ALJ to include restrictions relating to staying on task or attendance in the RFC assessment.") (citation omitted).

The Court thus finds this argument to be without merit.

***Supervisor and Co-worker Interactions***

Plaintiff's final argument is similar to the last: that the ALJ did not properly account for plaintiff's moderate limitations in interacting adequately with supervisors, coworkers, and the public to which Dr. Juriga and Dr. Fabiano opined. Dkt. #12-1, pp. 42-48. The Court disagrees.

The ALJ limited plaintiff to only occasionally interacting with supervisors and co-workers, and never interacting with the public. Dkt. #5, p. 174. This sufficiently accounts for the opined limitations. *See Leyla S-H*, 2026 WL 1493379, at *7 (ALJ adequately accounted for moderate limitations in social interactions by limiting her to occasional interactions with supervisors, coworkers, and the public); *Albino*, 2026 WL 1132831, at *6 (ALJ did not err where plaintiff had moderate limitation in interacting with

others and ALJ limited him to no more than occasional interaction with supervisors and co-workers and no contact with the public); *Elaine C.*, 2023 WL 7280720, at *5 (similar).

The Court also finds this argument to be without merit.

In sum, the Court concludes that the ALJ's decision was supported by substantial evidence and that the Commissioner's determination must be upheld.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #12) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #16) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED: Buffalo, New York
November 24, 2026

**s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**